Argued and submitted October 29, 2004, reversed and remanded March 9, 2005

# STATE OF OREGON,
## *Appellant,*

*v.*

# JOHN IZZICK JANSEN,
## *Respondent.*

## 220313089; A123414

108 P3d 92

Erika L. Hadlock, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

David A. Hill argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

.

## SCHUMAN, J.

Defendant was charged with interference with making a report, ORS 165.572, for preventing his wife from calling 9-1-1 during a domestic dispute. The trial court granted defendant's motion to suppress his wife's testimony based on the spousal privilege, OEC 505; in doing so, the court rejected the state's argument that the privilege did not apply because the case fell within the exception stated in OEC 505(4) for situations in which a spouse is charged with an offense against the person of the other spouse. We reverse and remand.

The trial court made no explicit findings of fact other than that defendant and the proposed witness were married to each other at all relevant times. The following facts, sparse but undisputed, appear in the record.[1] Defendant and his wife had a domestic dispute that began as an argument, escalated when defendant began to "act out," and may or may not have amounted to an assault. Defendant prevented his wife from calling for help by unplugging the telephone. She ultimately succeeded in placing the call from a business telephone at a different location.

■ Defendant was charged under ORS 165.572, which provides:

"(1)  A person commits the crime of interference with making a report if the person, by removing, damaging or interfering with a telephone line, telephone or similar communication equipment, intentionally prevents or hinders another person from making a report to a law enforcement agency, a law enforcement official, an agency charged with the duty of taking public safety reports or a 9-1-1 emergency reporting system.

"(2)  Interference with making a report is a Class A misdemeanor."

---

[1] Defendant, citing *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), urges us to adopt as fact a sequence of events that would be consistent with the trial court's ultimate ruling. *Ball*, however, does not empower us to construct factual scenarios and adopt them; it empowers us to presume that the trial court decided *disputed* material factual issues in a manner consistent with the court's conclusion. *Id.* at 487.

At an omnibus hearing, defendant moved to suppress his wife's testimony, arguing that it was inadmissible under OEC 505. That rule creates two privileges. One allows either spouse to claim a privilege with respect to "any confidential communication made by one spouse to the other during the marriage." OEC 505(2). The other provides that neither spouse may be compelled during the marriage to testify against the other spouse "as to any other matter occurring during the marriage." OEC 505(3). The state apparently acknowledged at trial (and acknowledges on appeal) that the proposed testimony was of the type that generally falls within the privilege, but it contends that it is admissible nonetheless because it falls within the exception set out in OEC 505(4). That provision provides, in part:

> "There is no privilege under this section:

> "(a) In all criminal actions in which one spouse is charged with * * * an offense or attempted offense against the person or property of the other spouse * * *."

Our task, then, is to decide whether, in being prosecuted for violating ORS 165.572, defendant was "charged with * * * an offense * * * against the person" of his wife.

That question, in turn, presents a prior question: Does the "offense" in the exception mean the crime generically, as in "homicide is a serious offense," or the particular act a defendant is charged with, as in "the defendant's offense was tearing the telephone out of the wall during a domestic dispute"?[2] The state and defendant both appear to presume that the word refers to the statute and not the conduct. Thus, defendant argues that, because ORS 165.572 is codified in chapter 165 of the Oregon Revised Statutes entitled "Offenses Involving Fraud or Deception" and not in chapter

---

[2] The term "person," although it appears in both ORS 165.572 ("[a] *person* commits the crime") and OEC 505(4)(a) ("an offense * * * against the *person* or property of the other spouse"), does not present a similar ambiguity. In the former statute, it clearly means an individual; in the latter it means an individual's body. *See, e.g., State v. Ford*, 310 Or 623, 626, 801 P2d 754 (1990) ("Ford had five concealable firearms in his possession, two of which he carried on his person and three of which were in a blue backpack that Ford kept with him at all times."); *see also Webster's Third New Int'l Dictionary* 1686 (unabridged ed 2002) ("the body of a human being"); *Black's Law Dictionary* 1178 (8th ed 2004) ("[t]he living body of a human being").

163 entitled "Offenses Against Persons," the statute cannot be considered an offense against the person for purposes of the exception to the privilege.

However, we are not inclined to rely on the vicissitudes of codification in order to classify the crime. It is the office of legislative counsel, not the lawmakers themselves, that decides where in the Oregon Revised Statutes a particular enacted law will be placed. *See* 1 *Oregon Revised Statutes* vii (2003) ("ORS numbers are assigned to codified session law sections."). Some statutes logically could fall within more than one chapter, and placement is therefore sometimes arbitrary. "Identity theft," for example, is in chapter 165, "Offenses Involving Fraud or Deception," but it could just as logically be considered an "Offense Against Property" belonging in chapter 164. In any event, choice of chapter cannot be regarded as reflecting legislative intent. *See State v. Dillman*, 34 Or App 937, 940-42, 580 P2d 567 (1978), *rev den*, 285 Or 195 (1979) (armed robbery is a crime against the person of the bank teller despite the fact that the statute is located in chapter entitled "Offenses Against Property").

Also apparently presuming that "offense" refers generically to the statute and not specifically to the conduct at issue, the state argues that interfering with making a report must be an "offense against the person" for purposes of OEC 505(4) because it is classified as a "person crime" for purposes of the sentencing guidelines. OAR 213-003-0001(15). Although the guideline classifications were approved by the Legislative Assembly, Oregon Laws 1989, chapter 790, section 87, they, too, in some instances bear little relationship to the substance of crimes. For example, ORS 166.275, inmate in possession of a firearm, is classified as a "person crime" even though inflicting or threatening to inflict harm on a person is not an element. OAR 213-003-0001(14).

Although both the parties' arguments are flawed on their own terms, we reject them for a more fundamental reason: The word "offense" in OEC 505(4)(a) does not refer to statutes but to conduct. OEC 505(4)(a) applies only in "criminal actions." Definitions of terms for purposes of the criminal code, therefore, are relevant. ORS 161.505 provides, in part:

"An offense is *conduct* for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state."

(Emphasis added.) Thus, an offense is conduct; the statutes establishing crimes or violations merely ascribe a categorical label to that conduct.

■ That definition is reinforced by the fact that some statutes criminalize a variety of actions, some of which may be conduct that inflicts harm to the person of another and some of which may not. ORS 165.572 is an example. If a defendant observed that the vacant lot next to his house was on fire, and the defendant's acquaintance told him that she intended to call the fire department, and the defendant disabled the telephone to prevent her from doing so, that defendant has committed the crime defined by ORS 165.572: He has (1) interfered with a telephone or similar communication equipment, (2) with the intention of preventing another person from (3) making a report (4) to a public safety agency. Indeed, he has committed the crime even if he disables the telephone because he knows that the report is a false alarm. In those situations, although the defendant has interfered with another individual, that interference is not an offense against that individual's person. If the acquaintance were a spouse, the defendant would not have committed a crime against her person, and the exception in OEC 505(4)(a) would not apply.[3]

---

[3] The state argues convincingly that the legislative history of ORS 165.572 demonstrates beyond doubt that the legislature intended the crime to provide protection to victims of domestic violence. *See* Testimony, House Committee on the Judiciary (Criminal Law), HB 3591, Apr 22, 1999 (statement of Klamath County District Attorney Ed Caleb) ("Tampering with or destruction of a phone is readily admitted by batterers * * *. The proposed legislation would classify the act as a person crime in Oregon."); Staff Measure Summary, House Committee on Criminal Law, HB 3591A, May 11, 1999 ("Proponents of the bill assert that this crime will *particularly address domestic violence situations* * * *."); Staff Measure Summary, Senate Committee on Judiciary, HB 3591B, June 4, 1999 ("Often, in domestic violence situations, the offender seeks to prevent the victim from contacting public safety authorities by cutting a telephone line * * *."); Fiscal Analysis of Proposed Legislation, Legislative Fiscal Office, HB 3591, June 15, 1999 ("This crime would most likely apply to domestic violence situations * * *."). When confronted with a conflict between what the legislative history indicates the drafters intended and what they actually wrote, we are bound to disregard their stated but unrealized intention. *Young v. State of Oregon*, 161 Or App 32, 39-40, 983 P2d 1044, *rev den*, 329 Or 447 (1999).

If, on the other hand, while a hypothetical defendant was choking his acquaintance, she reached for the telephone to call 9-1-1 and he disabled the instrument before she could place the call, we have no doubt that the defendant's interference with his acquaintance's attempt to summon help would constitute an offense against her person. Although his violation of ORS 165.572 is also, and perhaps even primarily, an offense against public order in that it amounts to an interference with the enforcement of the law, that fact does not mean that it cannot also be an offense against the acquaintance's person. If the acquaintance were the defendant's spouse, the exception in OEC 505(4)(a) would apply. More generally, if, in a prosecution under ORS 165.572, a defendant's interference with making a report is contemporaneous with physical abuse, attempted physical abuse, or the credible threat of imminent physical abuse, the interference is "against the person."

We therefore conclude that defendant cannot avail himself of the spousal privilege in this case if his interference with his wife was contemporaneous with physical abuse, attempted physical abuse, or the credible threat of imminent physical abuse. As noted above, on the current state of the record, we are unable to make that determination. We must therefore reverse and remand.

Reversed and remanded.