GARRETT, J.
*103 ORS 659A.030(1)(f) prohibits certain retaliatory employment actions by "any person." In this case, plaintiff asserted a claim under that statute against defendant, an individual with whom she previously worked. Defendant argued that the statute did not cover his conduct as alleged. The trial court agreed, and dismissed the claim under ORCP 21 A(8). On appeal, plaintiff assigns error to the trial court's ruling, arguing that the court misconstrued the statute. We conclude that the trial court erred, and therefore reverse and remand as to the retaliation claim, and otherwise affirm.
Reviewing the court's grant of defendant's motion to dismiss, we assume the facts alleged in plaintiff's complaint to be true and draw all reasonable inferences in plaintiff's favor. Caba v. Barker , 341 Or. 534, 536, 145 P.3d 174 (2006).
Plaintiff worked as a medical assistant at Hope Orthopedics (Hope), where she assisted defendant, an orthopedic surgeon, on a full-time basis. Initially, defendant and plaintiff had a good working relationship. When plaintiff applied for admission to Willamette University for a graduate degree program, defendant wrote her a glowing reference that emphasized her excellent work performance. After a few months, however, defendant began to harass plaintiff both sexually and on the basis of religion. Plaintiff notified Hope of defendant's behavior, and Hope conducted an investigation.
Meanwhile, plaintiff was accepted into the graduate program at Willamette. Soon after she resigned her position at Hope to enroll in the program, Hope closed its investigation of defendant's behavior, and defendant resigned from Hope. Shortly thereafter, defendant visited an administrator at Willamette and made disparaging remarks about plaintiff to the effect that she routinely made false allegations *135 that ruined people's careers to get financial settlements. Defendant's conduct caused unwanted and unflattering attention to plaintiff and caused her mental and emotional distress.
Plaintiff sued defendant for defamation, intentional infliction of emotional distress, intentional interference with *104 business relationships, and unlawful employment retaliation, ORS 659A.030(1)(f). In her complaint, plaintiff alleged that, at the times relevant to her allegations, defendant was a Hope employee, and effectively her supervisor. Plaintiff did not, however, allege that defendant was her employer.
Defendant moved to dismiss the retaliation claim under ORCP 21 A(8) (failure to state ultimate facts sufficient to constitute a claim), primarily arguing that ORS 659A.030(1)(f) applies only to retaliation by an employer against an employee, and that plaintiff had failed to allege sufficient facts in her complaint to establish that defendant was her employer. Defendant also argued that his conduct was not "discrimination" for purposes of ORS 659A.030(1)(f) because it did not adversely affect plaintiff's terms, conditions, or privileges of employment. The trial court granted defendant's motion and dismissed plaintiff's retaliation claim in a letter opinion and order that did not explain the court's reasoning. Plaintiff's claims for defamation and emotional distress proceeded to trial; a jury found in her favor on her defamation claim and in defendant's favor on the emotional distress claim.[1] Plaintiff now appeals the general judgment, challenging the trial court's dismissal of the retaliation claim.
On appeal, plaintiff argues that ORS 659A.030 (1)(f) applies to defendant because he is a "person." Defendant argues that plaintiff's proposed construction is not supported by the statutory text or legislative history.
In response to defendant's arguments regarding ORS 659A.030(1)(f), plaintiff also argues in the alternative that defendant was, in fact, her employer. Although, if that were true, it would obviate the need to consider the parties' other arguments, the record shows that plaintiff failed to preserve her alternative argument because plaintiff, in opposing defendant's motion to dismiss, never argued that defendant was her employer, and specifically contended that *105 she did not need to make that argument under the statute. In doing so, plaintiff prevented the trial court from addressing the issue. We accordingly decline to consider her argument for the first time on appeal. See State v. Wyatt , 331 Or. 335, 343, 15 P.3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."). We thus turn to the parties' primary arguments about ORS 659A.030(1)(f).
We review a trial court's dismissal of a claim under ORCP 21 A(8) for legal error. Nationwide Ins. Co. of America v. TriMet , 264 Or. App. 714, 715, 333 P.3d 1174 (2014). We also review a trial court's interpretation of a statute for legal error. State v. Urie , 268 Or. App. 362, 363, 341 P.3d 855 (2014).
In construing a statute, we first consider the statute's text and context. State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009). The context of a statute "may include other provisions of the same statute and related statutes *** and the historical context of the relevant enactments." Young v. State of Oregon , 161 Or. App. 32, 35, 983 P.2d 1044, rev. den. , 329 Or. 447, 994 P.2d 126 (1999) (internal citations omitted); see also State v. Ziska/Garza , 355 Or. 799, 806, 334 P.3d 964 (2014) ("Analysis of the context of a statute may include prior versions of the statute."). In construing the text and context, we neither "insert what has been omitted" nor "omit what has been inserted." ORS 174.010.
We may also consider legislative history to the extent it is helpful. Gaines , 346 Or. at 172, 206 P.3d 1042. Whether we find *136 legislative history helpful in determining the legislature's intent depends on the substance and probative quality of the legislative history. Id. However, "a party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it." Id. If the legislature's intent remains unclear after examining the text, context, and legislative history of a statute, then we apply "general maxims of statutory construction to aid in resolving the remaining uncertainty." Id. *106 The statute at issue in this case is the anti-retaliation provision of Oregon's Fair Employment Practices Act, which provides:
"(1) It is an unlawful employment practice:
"*****
"(f) [f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."
ORS 659A.030(1)(f) (emphasis added).
Plaintiff contends that, under the plain language of the statute, defendant "discriminated" against her by taking retaliatory action after plaintiff complained about defendant's harassment of her. In response, defendant asserts two theories as to why his conduct does not fall within the statute. First, defendant contends that he is not a "person" who could "discharge, expel or otherwise discriminate against" plaintiff because he was never plaintiff's employer. Second, defendant argues that he did not "discriminate" against plaintiff under the statute because defendant's conduct did not adversely affect the terms, conditions, or privileges of an existing employment relationship.
We first examine whether defendant was a "person" under ORS 659A.030(1)(f). For purposes of ORS chapter 659A:
"(9) 'Person' includes:
"(a) One or more individuals , partnerships, associations, labor organizations, limited liability companies, joint stock companies, corporations, legal representatives, trustees, trustees in bankruptcy or receivers."
ORS 659A.001(9)(a) (emphasis added). Thus, "person" appears to broadly encompass individuals like defendant.
The statutory context provides further support for that conclusion. The additional prohibitions in paragraphs (a) through (e) and (g) suggest that the key language in paragraph (f) was chosen deliberately. Paragraphs (a) and (b) prohibit specifically "employer[s]" from discriminating against individuals on the basis of race, sex, national origin, and *107 other characteristics. ORS 659A.030(1)(a), (b). Paragraph (c) prohibits discrimination specifically by "labor organization[s]," and paragraphs (d) and (e) prohibit such conduct specifically by "employment agenc[ies]" and "employer[s]." ORS 659A.030(1)(c)-(e). Paragraph (g) prohibits specifically "any person, whether an employer or an employee," from aiding, abetting, inciting, compelling, or coercing any of the other acts forbidden under ORS chapter 659A. Each of those terms-"employer," "labor organization," "employment agency," and "employee"-is defined distinctly from "person" in ORS 659A.001. Taken together, these provisions indicate that the legislature has carefully chosen what type of entity to subject to each of the respective prohibitions in subsection (1) of the statute. That statutory context strongly suggests that, had the legislature intended paragraph (f) to reach only employers (or labor organizations or employment agencies), it would have said so expressly, as it did in the related provisions. See Brown v. Hackney , 228 Or. App. 441, 447, 208 P.3d 988 (2009) ("When the legislature uses different terms in the same statute, we infer that it intended those terms to have different meanings."). In short, the text and context of paragraph (f) suggest that the phrase "any person" should be construed to mean what it appears to mean.
Defendant's argument to the contrary relies primarily on legislative history. Before 2001, paragraph (f) (then numbered as former ORS 659.030(1)(f) (1999), renumbered as ORS 659A.030(1)(f)(2001) ) provided that it was an "unlawful employment practice" for
*137 "any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden by this section, ORS 30.670, 30.685, 659.033 and 659.400 to 659.460, or because the person has filed a complaint, testified or assisted in any proceeding under ORS 659.010 to 659.110 and 659.400 to 659.545 or has attempted to do so."
(Emphasis added.) In 2001, the phrase "any employer, labor organization or employment agency" was replaced with "any person" as a result of the enactment of House Bill (HB) 2352 (2001), see Or. Laws 2001, ch. 621, § 50, a bill drafted by the Oregon Law Commission that made numerous changes to *108 the state's employment statutes. Defendant argues that the legislative history makes it clear that the legislature did not intend for the change to paragraph (f) to have substantive significance.
In support of that argument, defendant cites numerous instances in which HB 2352 was described to legislators as a "housekeeping" bill that endeavored to avoid substantive changes to the law. See, e.g. , Exhibit F, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb. 5, 2001 (written statement of Jack Roberts, Commissioner of the Bureau of Labor and Industries (BOLI) ) (summarizing the contents of HB 2352, explaining that the bill will "reorganize the statutes into [a] more logical order, clarify the administrative process through which [BOLI] enforces the laws, and make the statutes easier to understand and use"); Tape Recording, Senate Committee on Judiciary, HB 2352, Apr. 30, 2001, Tape 115, Side A (statement by Jeff Carter, Oregon Law Commission) ("One of the primary * * * mantras through this whole process was we didn't want to make any substantive changes. We wanted to take the substantive law as it existed and put it in a form or fashion that was more user-friendly."); Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb. 5, 2001, Tape 9, Side A (Marcia Ohlemiller, BOLI) ("No substantive rights were taken away or added, as far as we know. The endeavor was not to do that."); Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb. 5, 2001, Tape 9, Side A (Dave Heynderickx, Senior Deputy, Legislative Counsel) ("[T]here was an extreme sensitivity to not making changes in substance, perhaps more so than almost any other group I've worked with * * * over the last few sessions."); Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb. 5, 2001, Tape 8, Side B (statement of Betsy Earls, Associated Oregon Industries) ("[Associated Oregon Industries] does not object to this bill. From our perspective, there are no substantive changes to the law.").[2]
*109 In addition to the foregoing testimony about HB 2352 in general, the specific section of the bill at issue here, Or. Laws 2001, ch. 621, § 50, was summarized as one of several "series adjustments" that "[e]liminate[d] confusing and unnecessary references to series of statutes." Exhibit F, House Committee on Judiciary, Subcommittee on Civil Law, HB
*138 2352, Feb. 5, 2001 (written statement of Jack Roberts, Commissioner of BOLI) (providing an outline of all of HB 2352's amendments). That section received little to no discussion. In short, defendant reasons, the legislative history establishes that, by replacing "any employer, labor organization or employment agency" with "any person," the legislature did not intend to work a substantive change in the law.
Having reviewed the legislative history, we agree with defendant insofar as there is no express indication that the legislature intended to substantively expand the scope of former ORS 659.030(1)(f) (1999) beyond what it regulated before 2001: employers, labor organizations, and employment agencies. We also agree with defendant's general characterization of the legislative history, as it is clear that HB 2352 was presented to the House and Senate judiciary committees as a set of alterations to the employment statutes that was, in the main, not intended to make major substantive changes to the law.
The problem for defendant is that that general account of the purpose of HB 2352 is useless regarding the *110 specific change at issue in this case. Although HB 2352 was described as having the purpose of eliminating cumbersome language and making the employment statutes more readable and "user-friendly," that description does not explain the choice to replace the phrase "employer, labor organization or employment agency" with "any person" in paragraph (f). The phrase "employer, labor organization or employment agency" is neither particularly long nor cumbersome, and that exact phrase was left intact in other statutes that were also amended by HB 2352. See, e.g. , Or. Laws 2001, ch 621, § 25 (renumbering, but not amending, former ORS 659.028 (1999), renumbered as ORS 659A.321 (2001), which provides that it "is not an unlawful employment practice for an employer, employment agency or labor organization to observe the terms of a bona fide seniority system" (emphasis added) ); Or. Laws 2001, ch. 621, § 53 (amending former ORS 659.100 (1999), but leaving intact a list that included, "employers , labor organizations , governmental agencies, private organizations and individuals" (emphasis added) ). We are therefore not persuaded that the change to paragraph (f) could have been meant to make the statute simpler to read. Cf. Baker v. Maricle Industries, Inc. , No 6:16-cv-01793-AA, 2017 WL 1043282 at *6 (D. Or. Mar. 17, 2017) (construing "person" under ORS 659A.030(1)(f) to reach more than employers, labor organizations, and employment agencies, in part because "it is unclear how the layperson would have the decoder ring necessary to interpret 'any person' to mean 'employers' ").
Moreover, the shred of legislative history that does address paragraph (f) describes the purpose of the change to that paragraph as one of a number of "series adjustments." That description accurately describes one of the changes to paragraph (f) (which removed references to a series of other statutes, see Or. Laws 2001, ch. 621, § 50), but we fail to see how it explains the replacement of the phrase "employer, labor organization or employment agency" with "person." Calling that change a "series adjustment" makes little sense.
Acknowledging that the plain language of the statute is a problem for him, and further acknowledging that the legislative history does not directly address the *111 pertinent change in paragraph (f), defendant proposes an interpretation of that change that accords with the legislature's stated "nonsubstantive" objectives. Regarding the change from "any employer, labor organization or employment agency" to "any person," defendant proposes that the legislature was attempting to fix an internal anomaly in the pre-2001 statute. Defendant points out that former ORS 659.030(1)(f) (1999) prohibited employment discrimination against persons who opposed, among other things, unlawful practices in public accommodations and real estate transactions. According to defendant, those most likely to retaliate against someone for resisting that type of discrimination are not employers, labor organizations, and employment agencies, but shopkeepers, landlords, and realtors. Therefore, defendant suggests, the 2001 change to paragraph (f) might have been intended to "clean up" the statute by aligning the subject of the prohibition with *139 its object-a "housekeeping" result consistent with the overall purpose of HB 2352.
We are not persuaded by defendant's "nonsubstantive" interpretation. The premise of defendant's argument is that the drafters of HB 2352 would have found it strange that the former version of paragraph (f) specifically prohibited employers, labor organizations, and employment agencies from retaliating against a person for exercising her civil rights in the area of public accommodations. However, we have no great difficulty imagining a legislative objective to protect individuals from such retaliation, and we consequently see no reason to believe that the drafters of HB 2352 would have viewed the existing language as a technical defect.
Ultimately, we are left with largely unhelpful legislative history, and the fact that the legislature did make the key change to paragraph (f). We are bound by what the legislature actually did, not by what it might have thought it was doing (or not doing).See State v. Tyson , 243 Or. App. 94, 99, 259 P.3d 64, rev. den. , 351 Or. 401, 268 P.3d 152 (2011) ("In all events, even if we agreed with defendant that the legislative history was inconsistent with the statute's plain meaning, 'legislative history cannot substitute for, or contradict the text of, [a] statute.' " (quoting *112 White v. Jubitz Corp. , 347 Or. 212, 223, 219 P.3d 566 (2009) ) ); State v. Jansen , 198 Or. App. 260, 265 n 3, 108 P.3d 92 (2005) ("When confronted with a conflict between what the legislative history indicates the drafters intended and what they actually wrote, we are bound to disregard their stated but unrealized intention."). Thus, defendant can prevail only if the phrase "any person" in ORS 659A.030(1)(f), despite being defined to include "one or more individuals," is construed in a manner that excludes individual co-workers and supervisors.
A reason to consider such a construction is that the statutory prohibition refers to "discharge, expel or otherwise discriminate," and, as defendant points out, "discharge" and "expel" are activities in which employers (or labor organizations) engage. Furthermore, defendant argues, "discriminate" is preceded by the comparative modifier "otherwise," which ostensibly narrows the meaning of the modified word "discriminate" in light of the two words that precede it, such that it refers to an activity performed only by someone who can also "discharge" or "expel." See State v. Snyder , 337 Or. 410, 424, 97 P.3d 1181 (2004) (" 'Otherwise' is a comparative word; that is, to construe properly the meaning of the word that 'otherwise' is modifying, we must examine the concept or word to which that modified word is being compared."); see also Johnson v. Gibson , 358 Or. 624, 629-30, 369 P.3d 1151 (2016) (applying the noscitur a sociis canon of construction, under which "the meaning of an unclear word may be clarified by the meaning of other words used in the same context"). If the statute is understood that way, then defendant was not capable of "otherwise discriminat[ing]" against plaintiff because he never had the authority to discharge or expel her.
Although such a construction is plausible on the surface, other factors counsel against it, particularly the state of the case law at the time of the 2001 change. Lindell v. Kalugin , 353 Or. 338, 349, 297 P.3d 1266 (2013) ("Case law existing at the time of the adoption" of the rule or statute "forms part of the context."); Mastriano v. Board of Parole , 342 Or. 684, 693, 159 P.3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing on *113 those statutes."). When the legislature adopted HB 2352, the United States Supreme Court had recently decided Robinson v. Shell Oil Co. , 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), which construed 42 USC section 2000e-3(a), an anti-retaliation provision of Title VII that closely resembles former ORS 659.030 (1999).[3] The Court concluded that *140 section 2000e-3(a), in accomplishing its purpose of "[m]aintaining unfettered access to statutory remedial mechanisms" of Title VII, necessarily proscribes a wide variety of discrimination, including post-employment retaliation like the retaliatory dissemination of negative job references. Id. at 345-46, 117 S.Ct. 843.
Even though the Robinson decision concerns a federal statute, that case would have guided Oregon courts' construction of former ORS 659.030 (1999) because Oregon courts have historically looked to Title VII precedent when analyzing analogous provisions in ORS chapter 659. See, e.g. , Vaughn v. Pacific Northwest Bell Telephone , 289 Or. 73, 86-88, 611 P.2d 281 (1980) ; School District No. 1 v. Nilsen , 271 Or. 461, 469-74, 534 P.2d 1135 (1975). In short, it is likely that, by 2001, the legislature already contemplated that unlawful retaliation could occur in the post-employment context and by means of actions like negative job references, which can be undertaken by supervisors and others who do not necessarily have the authority to "discharge." Against the backdrop of case law that had established a potentially broad scope of prohibited retaliation, the legislature's decision to eliminate the limiting phrase "employer, labor *114 organization or employment agency" and extend the prohibition to "any person" speaks loudly.[4]
In sum, there is nothing in the legislative history that convinces us to depart from the plain meaning of ORS 659A.030(1)(f). See, e.g. , Tektronix, Inc. v. Dept. of Rev. , 354 Or. 531, 544, 316 P.3d 276 (2013) (noting the "difficult task" a party undertakes when urging that legislative history overcomes seemingly unambiguous text (quoting Gaines , 346 Or. at 172, 206 P.3d 1042 ) ). To the extent that the trial court concluded that defendant could not be liable under the statute simply because he was not plaintiff's employer, the trial court erred.
Defendant also contends that his alleged conduct does not fall within the statutory phrase "otherwise discriminate" because it did not adversely affect the terms, conditions, or privileges of an existing employment relationship. Defendant argues that the phrase "otherwise discriminate" must be construed consistently with the preceding terms "discharge" and "expel," which deal with conduct in the context of an existing employment relationship (i.e. , reduction of wages, cancellation of benefits, or denial of promotion). Defendant warns that a broader interpretation of "discriminate" would expand ORS 659A.030(1)(f) beyond the legislature's intended scope by encompassing activity that is only tangentially related to employment.
Defendant's narrow interpretation, however, is inconsistent with the broader construction of ORS 659A.030(1)(f) that follows from both Oregon and federal cases. For one, *115 the Oregon Supreme Court has previously construed "discriminate" broadly under paragraph (f). In PSU Association of University Professors v. PSU , 352 Or. 697, 709-13, 291 P.3d 658 (2012), the court distinguished paragraph (f) from the surrounding statutory provisions *141 on the basis of its inclusive scope. Paragraphs (a) through (e) address discrimination on the basis of specified characteristics by directly prohibiting adverse treatment in the listed employment context. Id. at 710, 291 P.3d 658. Paragraph (f), in contrast, safeguards access to those surrounding anti-discrimination mechanisms, and is written "in broad terms" to "ensur[e] that any person who is engaged in protected conduct, such as opposing discriminatory practices ***, is not discouraged from doing so by the threat of being subjected to adverse, disparate treatment." Id. Accordingly, the court concluded that paragraph (f) achieves its objective by prohibiting any person from "engaging in retaliatory activity that reasonably would impede or deter employees from pursuing their rights under that chapter." Id. at 713, 291 P.3d 658. The provision is limited only by the requirement that the harm protected against is "not a theoretical or trivial harm, but one that qualifies as a substantive difference in treatment." Id.
That construction is consistent with how federal courts have interpreted the analogous anti-retaliation provision in Title VII. Id. at 710-11, 291 P.3d 658 ("[F]ederal precedent interpreting the antidiscrimination provisions of Title VII can provide useful additional context to aid our analysis of the meaning of ORS 659A.030(1)(f)."). For example, in Burlington N. & S. F. R. Co. v. White , 548 U.S. 53, 61-64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the United States Supreme Court relied on similar reasoning as in PSU Association of University Professors to conclude that section 2000e-3(a) encompasses conduct outside of the workplace. The Court distinguished section 2000e-3(a) from the surrounding anti-discrimination provisions on the basis that section 2000e-3(a) was intended to prevent employers "from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Id. at 63, 126 S.Ct. 2405.[5] To achieve that objective, the Court reasoned *116 that section 2000e-3(a) reached beyond merely "actions and harms *** that are related to employment or occur at the workplace." Id. at 57, 126 S.Ct. 2405. The Court elaborated:
"An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. A provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the antiretaliation provision's 'primary purpose,' namely, '[m]aintaining unfettered access to statutory remedial mechanisms.' "
Id. at 63-64, 126 S.Ct. 2405 (citations omitted; emphasis and alterations in original).
Moreover, as discussed above, the Robinson Court construed section 2000e-3(a) to encompass post-employment discrimination, which obviously includes discrimination that does not affect the terms, conditions, and privileges of employment. In Robinson , the petitioner filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that the respondent, Shell Oil Company, discharged him because of his race. 519 U.S. at 339, 117 S.Ct. 843. While that charge was pending, the petitioner applied for a job with a different company. Id. When the other company contacted Shell Oil seeking an employment reference, Shell Oil allegedly gave the petitioner a negative reference in retaliation for his filing of the EEOC charge. Id. Reasoning that the primary purpose of the anti-retaliation provision was to "maintain[ ] unfettered access to statutory remedial *142 mechanisms," the Court held that the statute necessarily encompassed post-employment retaliation because such post-employment retaliation could still deter the utilization of Title VII's remedial mechanisms. *117 Id. at 346, 117 S.Ct. 843. That result, the Court explained, was necessary for the anti-retaliation provision to achieve its objective of protecting employees who complain about one of the other forms of discrimination prohibited in the Title:
"[S]everal sections of [the surrounding provisions] plainly contemplate that former employees will make use of the remedial mechanisms of Title VII. Indeed, § 703(a) expressly includes discriminatory 'discharge' as one of the unlawful employment practices against which Title VII is directed. Insofar as [ section 2000e-3(a) ] expressly protects employees from retaliation for filing a 'charge' under Title VII, and a charge under § 703(a) alleging unlawful discharge would necessarily be brought by a former employee, it is far more consistent to include former employees within the scope of 'employees' protected by [ section 2000e-3(a) ]. *** [T]o hold otherwise would effectively vitiate much of the protection afforded by [ section 2000e-3(a) ]."
519 U.S. at 345, 117 S.Ct. 843 (citations omitted).
Like in Title VII, the provisions surrounding paragraph (f) make it unlawful for employers and other entities to discharge and expel persons for their sex, race, religion, and similar immutable characteristics. See, e.g. , ORS 659A.030(1)(a)-(e). If paragraph (f) prohibited only discrimination affecting existing employment relationships, then paragraph (f) would offer no protection to those who suffer retaliation for complaints in response to their own unlawful discharge. Accordingly, we reject defendant's proposed construction of "discriminate."
We acknowledge that Robinson addresses post-employment retaliation by the former employer , and therefore does not squarely support the imposition of liability in a circumstance like this, where both the plaintiff and the defendant shared the status of former employees when the retaliatory conduct occurred. As defendant points out, a construction of ORS 659A.030(1)(f) that allows for liability against an individual co-worker has the potential to significantly expand the statute's reach-all the more so if the statute is also construed to encompass conduct that occurs after that co-worker also has terminated his or her employment. Under some circumstances, retaliatory conduct by one former employee against another former employee, even if *118 connected in some way to their past employment, might be so attenuated from that employment that it cannot reasonably be understood to fall within the legislature's regulation of "unlawful employment practices."
We need not explore the outer boundaries of what paragraph (f) may cover, however, to resolve this case. Defendant's retaliatory conduct occurred within a very short period of time after he left Hope and was specifically connected to actions that he took in the course of his employment there. The facts here resemble Robinson : defendant, who was plaintiff's supervisor at Hope, wrote a positive letter of recommendation in connection with plaintiff's next professional move; later, as a result of her complaint about his harassment of her, he retaliated by effectively rescinding that recommendation and making derogatory statements about her. Defendant does not argue that such conduct is insufficiently serious to deter a person from exercising her rights under the employment statutes. Accordingly, we are satisfied that, under the narrow facts of this case, defendant's conduct is the kind of discrimination that the legislature intended to regulate in ORS 659A.030(1)(f), even though it occurred outside of the workplace and after both plaintiff and defendant resigned from Hope.
Reversed and remanded as to retaliation claim; otherwise affirmed.

The court dismissed plaintiff's claim for intentional interference with business relationships after plaintiff declined to oppose defendant's motion for summary judgment on that claim. That and plaintiff's other claims are not at issue on appeal.

It is worth noting, however, that some legislators and proponents of HB 2352 were careful to qualify their descriptions of the bill as nonsubstantive. See, e.g. , Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb. 5, 2001, Tape 9, Side A (Marcia Ohlemiller, BOLI) ("I should also say, however, that whether some of the things that we did resulted in substantive changes, reasonable minds can sometimes differ and there are a couple of those things that are going to be the subject of discussion today, where we felt there was a lack of clarity and other people may have felt that we made a change."); Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb. 5, 2001, Tape 9, Side A (Dave Heynderickx, Senior Deputy, Legislative Counsel) ("You cannot say *** there are no substantive changes because there are a lot of ambiguities in the statutes that existed here, and one of the things that happens when you write a clear statement is, and you remove ambiguity, you may remove somebody's argument for what this law meant. *** So, you know, I'd hate to have the impression that there is absolutely nothing in here that constitutes a change in any substance, but clearly the effort here was to keep it as non-substantive as possible ***."); Tape Recording, Senate Committee on Judiciary, HB 2352, Apr. 30, 2001, Tape 115, Side A (statement of Sen. John Minnis, Chair) (concluding that "there are some substantive changes in here but they are minor I assume, or conforming kind of substantive changes," after questioning a proponent of HB 2352 about amendments to BOLI's authority to investigate civil rights violations).

42 USC section 2000e-3(a) provides, in relevant part:
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees *** because [the employee] has opposed any practice made an unlawful employment practice by this subchapter ***."
For the reader's convenience, we again lay out the relevant parts of former ORS 659.030(1)(f) (1999) for comparison:
"(1) *** [I]t is an unlawful employment practice:
"* * * * *
"(f) For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden by this section, ORS 30.670, 30.685, 659.033 and 659.400 to 659.460, or because the person has filed a complaint, testified or assisted in any proceeding under ORS 659.010 to 659.110 and 659.400 to 659.545 or has attempted to do so."

The Robinson decision might also shed light on why the legislature replaced "employer, labor organization or employment agency" with "person" in paragraph (f). In Robinson , the Court determined that the term "employees" in section 2000e-3(a) is ambiguous as to whether it includes former employees, partly because the term lacks temporal qualifiers like "current" and "former," and also because some other provisions in Title VII unambiguously use "employees" to include former employees while others unambiguously include only current employees. 519 U.S. at 341-45, 117 S.Ct. 843. Former ORS 659.030(1)(f) (1999) arguably suffered from the same problems, and, under Robinson 's reasoning, the term "employer" in that provision was potentially ambiguous as to whether it included former employers. The legislature might have replaced "employer" with "person" to clarify that point for lay readers who were unfamiliar with Robinson , such that paragraph (f) would encompass former employers on its face. The drafters could have considered that replacement to be a "nonsubstantive" change that clarified an ambiguous term of an analogous federal law.

The Court's explanation for this difference in 42 USC section 2000e-3(a) applies aptly to ORS 659A.030(1)(f) as well. In Burlington , the Court noted that the language in the anti-discrimination provisions-for example, "hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee"-"explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." Id. at 62, 126 S.Ct. 2405. However, "[n]o such limiting words appear in the antiretaliation provision." Id.
Similarly, the terms in ORS 659A.030(1)(a) to (e) and (g) -for example, "hire," "discharge," "discriminate *** in compensation or in terms, conditions or privileges of employment," "exclude," "expel," "classify or refer for employment," "aid," "abet," "incite," "compel," or "coerce"-explicitly limit the scope of those provisions. The term "discriminate" in paragraph (f), meanwhile, provides a less specific limitation.