Argued and submitted March 1, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings October 11, 2007

## Jerome E. BAILEY,
*Petitioner on Review,*

*v.*

## LEWIS FARM, INC.,
an Oregon corporation;
Paccar, Inc., a Delaware corporation,
dba Kenworth Motor Truck Company
and/or Kenworth Truck Company;
and May Trucking Company,
an Oregon corporation,
*Respondent on Review.*

(CC 0211-11957; CA A124145; SC S53916)

171 P3d 336

Gerald C. Doblie, Doblie & Associates, Portland, filed the briefs for petitioner on review.

Gordon T. Carey, Jr., Portland, argued the cause and filed the briefs for respondent on review May Trucking Company.

Kathryn H. Clarke, Portland, argued the cause and filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Michael A. Lehner, Lehner & Rodriguez PC, Portland, filed the brief for *amicus curiae* Oregon Association of Defense Counsel.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

KISTLER, J.

Balmer, J., concurred and filed an opinion.

** Linder, J., did not participate in the consideration or decision of this case.

## KISTLER, J.

The axle failed on a used tractor-trailer that May Trucking Company (defendant) had sold to another entity approximately a year earlier. As a result of the axle's failure, the tractor-trailer's wheels came off, bounced across the road, and hit plaintiff's vehicle in the oncoming lane of traffic, resulting in substantial injuries to plaintiff. Plaintiff sued, alleging that defendant's negligent maintenance of the axle during the time that it had owned the tractor-trailer was a substantial cause of the axle's failure. Defendant moved to dismiss plaintiff's complaint against it, reasoning that its sale of the tractor-trailer approximately a year before the accident occurred excused it from any responsibility for negligently maintaining the axle. The trial court agreed with defendant's position, dismissed plaintiff's negligence claim, and entered judgment in defendant's favor. The Court of Appeals affirmed the trial court's judgment by an evenly divided vote. *Bailey v. Lewis Farm, Inc.*, 207 Or App 112, 139 P3d 1014 (2006). We allowed plaintiff's petition for review and now reverse the Court of Appeals decision and the trial court's judgment.

■ In reviewing the trial court's ruling dismissing plaintiff's complaint, we assume that the facts alleged in the complaint are true and draw all reasonable inferences in plaintiff's favor. *See Curtis v. MRI Imaging Services II*, 327 Or 9, 11, 956 P2d 960 (1998) (stating standard of review). The complaint alleges that defendant bought a 1993 Kenworth tractor-trailer when it was "new or nearly new." Defendant sold the tractor-trailer in November 1999, after driving it approximately 500,000 miles. Once during the time that defendant owned the tractor-trailer, on August 8, 1997, "maintenance work was performed on the rear axle shaft and the drive axle on the Kenworth truck, involving one or more spindle nuts." Otherwise, "[defendant] failed to perform any of the [manufacturer's] recommended services [on the axles] during more than 500,000 miles of use." Specifically, defendant failed to clean and repack the bearings every 25,000 miles and also failed, every 100,000 miles, to disassemble, clean, inspect,

and refill or repack the bearings with clean lubricant, readjust the bearing play, and torque the rear axle flange nuts.

The complaint alleges that defendant was negligent in failing to follow the recommended maintenance regarding the rear axle assembly and bearings. The complaint also alleges that defendant was negligent "in that any maintenance to the rear axle shaft and/or drive axle [that defendant performed while it owned the tractor-trailer] failed to result in a truck that was safe to operate."

As noted, defendant sold the tractor-trailer in November 1999, which "was then owned by other non-parties prior to being sold to [Lewis Farm, Inc. (Lewis Farm)] in or about January, 2000." In November 2000, approximately a year after defendant sold the tractor-trailer, an employee of Lewis Farm was driving the tractor-trailer when the "left rear axle assembly separated from the tractor and the dual wheels and tires came off the 1993 Kenworth unit, bounced across the highway, hitting plaintiff's vehicle and causing [it] to careen down an embankment and become engulfed in flames." According to the complaint, defendant's negligent maintenance of the axle "was a substantial contributing cause of the failure of the rear axle" and the resulting injuries to plaintiff.

Plaintiff brought this action against defendant, Lewis Farm, and Paccar, Inc., which had manufactured the Kenworth tractor-trailer. Plaintiff's claims against Lewis Farm and Paccar have been resolved, and only his negligence claim against defendant remains. Defendant moved to dismiss that claim because it failed to state a claim for which relief could be granted. Among other things, defendant argued that, because it had not owned the truck for approximately a year before the accident occurred, the accident and the resulting injury to plaintiff were not a foreseeable consequence of its alleged negligence. The trial court agreed and entered an order "dismissing plaintiff's claim with prejudice and without leave to re-plead on the ground that it fails to state a claim upon which relief can be granted." The trial court entered judgment accordingly.

■ As noted, the Court of Appeals affirmed the trial court's judgment by an evenly divided vote. *Bailey*, 207 Or

App at 112. Judge Ortega wrote an opinion concurring in the judgment, which four other members of the court joined.[1] That opinion would have held that "the injuries to plaintiff were not a reasonably foreseeable consequence of [defendant's] alleged failure to maintain the Kenworth." *Id.* at 120 (Ortega, J., concurring). The concurrence reasoned that, as a result of the sale, defendant had lost ownership and, more importantly, control of the tractor-trailer for a year before the accident occurred. *Id.* at 121. It followed, the concurrence reasoned, that defendant's negligence was not the immediate cause of plaintiff's injuries. Rather, "those who drive and maintain a vehicle at the time of an accident—those who exercise the ability, to the extent possible, to assess the vehicle's roadworthiness—form the intervening harm-producing force behind any injuries that result from the unsafe condition of the vehicle." *Id.* In essence, the concurrence would have held that Lewis Farm's opportunity to correct the result of defendant's earlier negligence absolved defendant of any liability.

The five dissenting judges filed three separate opinions. Those opinions yield two central propositions. First, the dissenting judges reasoned that "the harm alleged is exactly the type of harm that a person would expect to be caused by defendant's negligence: the complaint alleges that a truck axle negligently maintained by defendant broke off and caused an accident that resulted in the injuries for which plaintiff seeks to recover." *Id.* at 139 (Rosenblum, J., dissenting). Second, the dissenting judges explained that Lewis Farm's failure to remedy the consequences of defendant's negligence does not excuse defendant from liability. *Id.* at 124 (Haselton, J., dissenting). In their view, the contrary position stated in the concurring opinion finds no support in this court's decisions. *Id.* at 124-26 (Haselton, J., dissenting).

---

[1] The Court of Appeals decision affirming the trial court's judgment by an evenly divided vote allowed that judgment to stand but does not have any precedential effect. *See State v. Boots,* 308 Or 371, 376, 780 P2d 725 (1989) (explaining effect of upholding lower court's decision by an evenly divided vote). The Court of Appeals has adopted the practice of publishing the concurring and dissenting opinions in such cases.

We allowed review to consider the issue that divided the Court of Appeals.

Because this case arises on defendant's motion to dismiss, we assume, as the complaint alleges, that defendant negligently maintained the axle that later failed.[2] We also assume, as the complaint alleges, that defendant's negligent maintenance of the axle "was a substantial contributing cause of the failure of the rear axle * * * and of plaintiff's damages." In light of those allegations, if defendant had continued to own and operate the tractor-trailer at the time of the accident, there can be little dispute that plaintiff's complaint would state a claim for negligence against defendant. The type of harm that plaintiff suffered fell squarely within the scope of the risk that defendant's negligence created; it was reasonably foreseeable that defendant's failure to maintain the axle would cause the axle to fail and that the failed axle would result in the type of injury that occurred in this case. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) (discussing limits of negligence liability).

■ According to the complaint, the only factual basis for mounting an argument that defendant is not liable for the foreseeable consequences of its negligence derives from the allegation that defendant sold the tractor-trailer approximately a year before the injury occurred. In assessing the legal effect of that fact, it is important to remember that the complaint also alleges that defendant's negligent maintenance of the axle was a substantial contributing cause of the axle's failure and the resulting injuries to plaintiff. Indeed, the claim for relief against defendant does not allege that anything else caused the axle to fail; that is, the claim for relief against defendant does not allege that anything that

---

[2] There is a suggestion in defendant's brief on the merits that failing to comply with the manufacturer's recommended maintenance does not constitute negligence. Whatever the merits of that factual argument, it presents a question of proof for trial or summary judgment. It does not provide a basis for dismissing the complaint for failure to state a claim for relief. Additionally, because we assume, as the complaint alleges, that defendant negligently maintained the axles on the tractor-trailer, we refer throughout the remainder of this opinion to defendant's negligent maintenance of the axles without putting "alleged" before each reference to negligence.

the subsequent owners did or did not do during the year that they owned the tractor-trailer caused the axle to fail.[3] According to the allegations before us, the only factual basis that defendant can invoke for saying that it is not responsible for the consequences of its negligence is that it sold the tractor-trailer approximately a year before the axle failed and the wheels came off the tractor-trailer.

In arguing that its lack of ownership at the time of the accident provides a sufficient basis to avoid liability, defendant observes that this court explained in *Fazzolari*:

"unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

303 Or at 17. Defendant draws two legal principles from that passage. It notes initially that, under *Fazzolari*, a defendant may argue that it is excused from liability because "a status, a relationship, or a particular standard of conduct * * * limits the defendant's duty." *Id.*; *see Boothby v. D. R. Johnson Lumber Co.*, 341 Or 35, 46, 137 P3d 699 (2006) (holding that independent contractor's status limited owner's duty to contractor's employee). Alternatively, defendant argues that, although the question whether an injury was a foreseeable consequence of a defendant's negligence ordinarily presents a question of fact for the jury, in some cases a court may hold, as a matter of law, that the injury was not reasonably foreseeable.

---

[3] Plaintiff's complaint contains five claims for relief. The fifth claim for relief alleges that defendant negligently maintained the axle during the time it owned the tractor-trailer. Although the first claim for relief alleges that Lewis Farm negligently failed to inspect and maintain the axle when it owned the tractor-trailer, the fifth claim for relief neither includes those allegations nor incorporates them by reference. In reviewing defendant's motion to dismiss plaintiff's fifth claim for relief, we are limited to the allegations in that claim for relief and may not look to the allegations in other claims for relief that plaintiff has not incorporated by reference. *See Dotson v. Smith*, 307 Or 132, 137-38, 764 P2d 540 (1988) (allegations in claim against one defendant may not be used to support a motion to dismiss a claim against a different defendant under ORCP 21 A(9)); *cf.* ORCP 16 B and D (providing that separate claims must be stated separately but that parties may incorporate by reference allegations from one claim in another).

Defendant relies on both legal principles to support the Court of Appeals decision. It argues initially that the fact that it had not owned the tractor-trailer for approximately a year before the axle failed and the wheels fell off establishes, as a matter of law, that it owed no duty to plaintiff. Alternatively, it argues that the accident was not a reasonably foreseeable consequence of its negligence. We begin with defendant's first argument.

■ Defendant reasons that it owed no duty to plaintiff because a federal regulation and an analogous state statute imposed an obligation on Lewis Farm, the owner of the tractor-trailer at the time of the accident, to maintain it in a safe condition. That argument may rest on one of two related but separate propositions. First, defendant's "no duty" argument may rest on the proposition that the federal regulation and the state statute affirmatively limit the duty that a prior owner of a motor vehicle owes to persons injured as a consequence of that owners' negligence. *Cf. Boothby*, 341 Or at 46 (following general rule that owner owes no duty to independent contractor's employees). To the extent defendant's "no duty" argument rests on that proposition, neither the federal regulation nor the state statute supports it.

The federal regulation on which defendant relies provides, in part, that "[e]very motor carrier shall systematically inspect, repair, and maintain * * * all motor vehicles subject to its control." 49 CFR § 396.3(a). Even if we assume that Lewis Farm is a motor carrier within the meaning of the regulation, the terms of that regulation imposed an obligation on Lewis Farm to maintain the tractor-trailer. They do not excuse a prior owner, such as defendant, from the consequences of its negligence during the time it owned the motor vehicle. If anything, the regulation cuts against defendant's argument; it implies that defendant had a duty to maintain the vehicle in a safe condition during the time it owned it.

■ ORS 815.020(1)(b), the state statute on which defendant relies, poses the same problem for defendant's argument. That statute makes it a traffic offense for the owner of a vehicle to "caus[e] or knowingly permi[t] the vehicle to be driven or moved on any highway when the vehicle is in such unsafe condition as to endanger any person." Nothing in the

terms of that statute purports to excuse a prior owner from the consequences of its negligence. Rather, the statute establishes only that the current owner of a vehicle must ensure that a vehicle is safe to operate if the owner causes or knowingly permits the vehicle to be driven on a highway.

■   Defendant's "no duty" argument may rest on an alternative proposition. Defendant may be arguing that, if Lewis Farm had a statutory or regulatory duty to inspect, repair, and maintain the tractor-trailer, then, as a matter of general negligence law, the existence of that duty relieved defendant of the consequences of its earlier negligence.[4] To the extent that defendant's "no duty" argument rests on that proposition, it is at odds with this court's decision in *Hills v. McGillvrey*, 240 Or 476, 402 P2d 722 (1965), as well as general principles of tort law.

In *Hills*, an automobile parts store negligently supplied the wrong wheel bearing to a mechanic, who negligently failed to realize that fact and installed it in a customer's car. *Id.* at 479. As a result of installing the wrong wheel bearing, the brakes failed, causing the customer to lose control of her car and kill another person. *Id.* The deceased person's estate brought a negligence action against both the automobile parts store that supplied the wrong part and the mechanic who failed to recognize that fact. *Id.* In response to the estate's claim, the parts store contended that "it was the duty of the mechanic to install the part with due care, and that if [the mechanic] had exercised due care he would have discovered that he had been given the wrong part and presumably would not have installed it." *Id.* at 482. The automobile parts store argued that, as a matter of law, the mechanic's duty to install the correct part excused the parts store from the consequences of its negligence in supplying the wrong part. *Id.*

---

[4] Defendant also relies on *Boothby* to argue that its lack of control over the tractor-trailer once it sold it excuses defendant from any responsibility for its negligence. In *Boothby*, however, the defendant never had any right to control nor did it ever exercise any control over the independent contractor whose negligence harmed the plaintiff. 341 Or at 41, 46. In this case, defendant had control over the tractor-trailer during the six years that it owned it and, according to the complaint, defendant's negligent maintenance of the axle during that time was a substantial cause of the axle's later failure and the injuries plaintiff suffered. *Boothby*'s reasoning does not advance defendant's argument.

This court held otherwise. It explained that,

> "[i]f it was reasonably foreseeable that some harm to the traveling public could result from the installation of the wrong part on an automobile, and if it was reasonably foreseeable that the mechanic might negligently install on an automobile a part supplied him for such a purpose, then it would follow that there was a duty on the part of the suppliers not to supply the mechanic the wrong part."

*Id.* The court held that the question whether those factual matters were reasonably foreseeable presented an issue for the jury; it could not say, as a matter of law, that the mechanic's failure to correct the parts store's prior negligence excused the parts store from all liability. *Id.* at 482-83.

The automobile parts store's argument in *Hills* is difficult to distinguish from the argument that defendant advances in this case. If the mechanic's breach of his duty in *Hills* did not excuse the parts store from the foreseeable consequences of its prior negligence, then it is difficult to see how Lewis Farm's duty to maintain the tractor-trailer axle relieved defendant of liability for the foreseeable consequences of its prior negligence. Not only could a reasonable juror find that it was foreseeable that Lewis Farm would be as deficient in maintaining the axle as defendant allegedly had been, but the claim for relief against defendant did not even allege that Lewis Farm had been deficient in maintaining the axle during the time it owned the truck.

The holding in *Hills* is consistent with the general rule that "the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct" does not excuse the actor from responsibility for his or her own negligence. *See Restatement (Second) of Torts* § 452(1) (1965) (stating general rule); Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 4 *Harper, James and Gray on Torts* § 20.5, 201-02 and n 47 (3d ed 2007) (describing general rule). We note that some courts have recognized that there are "exceptional cases" where the responsibility has been shifted to another party, by express agreement or otherwise, such that "the original actor is relieved of liability for the result which follows from the operation of his own negligence." *See*

*Restatement (Second) of Torts* § 452 comment d (noting proposition); *but see* 4 *Harper, James and Gray on Torts* § 20.5, 202 n 47 (questioning exception noted in the *Restatement*).

In the context of the sale of used vehicles, some courts have looked to a combination of factors, such as the terms of the sale, whether the original owner sold the used vehicle to a dealer, which may be expected to inspect the vehicle before reselling it, and whether the defect resulting from the original owner's negligence was patent, in deciding whether to hold, as a matter of law, that the original owner was excused from the consequences of its prior negligence. *See, e.g., Ikerd v. Lapworth*, 435 F2d 197 (7th Cir 1970) (illustrating proposition); *Stapinski v. Walsh Constr. Co.*, 272 Ind 6, 395 NE2d 1251 (1979) (same); *but see Dutchmen Mfg., Inc. v. Reynolds*, 849 NE2d 516 (Ind 2006) (limiting *Stapinski*).

We need not decide whether either the rationales or the results in those cases are consistent with Oregon negligence law; that is, we need not decide whether those factors, or some combination of them, would be sufficient to permit a court to say, as a matter of law, that defendant is completely excused from the consequences of its prior negligence. The limited allegations before us do not disclose whether any of the facts that were critical to those other decisions are present in this case. Rather, defendant moved to dismiss plaintiff's claim for relief against it, and the only allegation in that claim on which defendant can base its defense is that Lewis Farm owned the tractor-trailer approximately a year before the accident occurred. Under this court's decisions, that allegation is not sufficient for a court to say, as a matter of law, that defendant is not responsible for the consequences of its negligence.

■ Defendant advances a different argument. It contends that the harm that plaintiff suffered was not a reasonably foreseeable consequence of its conduct. If we assume that the allegations in the complaint are true, as we must on review of a motion to dismiss, it is difficult to see what basis defendant has for that argument. The complaint alleges that defendant negligently maintained the axle when it owned

the tractor-trailer and that defendant's negligent mainte-
nance "was a substantial contributing cause of the failure of
the rear axle * * * and of plaintiff's damages." If those facts
are true, then a reasonable jury could find that the failure of
the axle, the loss of the wheels, and the resulting injury to
plaintiff were all foreseeable.

As we understand defendant's foreseeability argu-
ment, it turns in part on assuming that a different set of facts
applies. Defendant's argument assumes that the axle failed,
not as a result of its negligence, but either as a result of nor-
mal wear and tear or as a result of Lewis Farm's negligent
maintenance.[5] That, however, is not what the claim for relief
against defendant alleges. It may be that the evidence
brought out, at either summary judgment or trial, will show
that defendant was not negligent or that defendant's con-
duct, even if negligent, was not a substantial cause of the
axle's failure. However, for the purposes of reviewing the
trial court's ruling on defendant's motion to dismiss, we must
assume that the facts alleged in the complaint are true.

Alternatively, in arguing that the axle's failure was
not a reasonably foreseeable consequence of its negligence,
defendant adopts the reasoning in the concurring opinion in
the Court of Appeals. Defendant contends, as the concur-
rence reasoned, that Lewis Farm's ownership of the tractor-
trailer for approximately 11 months before the axle failed
constitutes an "intervening harm-producing force" that
relieved defendant of the consequences of its earlier negli-
gence. That argument, however, simply repeats in a different
guise the same point that we have considered and rejected—
that Lewis Farm's opportunity to discover and correct the
results of defendant's prior negligence immunizes defendant
from responsibility for its own negligent conduct. As

---

[5] For example, defendant argues in its brief on the merits that, if plaintiff's
complaint states a cause of action for negligence, then every person who "sells a
high-mileage vehicle faces liability if any subsequent owner does not maintain the
vehicle and chooses to drive it in an unsafe condition. That is so even if the original
owner maintained the vehicle and sold it in a 'safe-to-operate' condition." Contrary
to the assumptions that underlie defendant's argument, the complaint alleges that
the axle's failure resulted from defendant's negligence, not from the high mileage.
Similarly, the claim for relief alleges that, as a result of defendant's minimal main-
tenance, the tractor-trailer was not "safe to operate."

explained above, defendant's argument is at odds with this court's holding in *Hills* and the general rule stated in section 452(1) of the *Restatement (Second) of Torts*.[6]

Defendant argues that two more recent decisions from this court, *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), and *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 83 P3d 322 (2004), permit a court to say as a matter of law that the axle's failure was not a reasonably foreseeable consequence of its negligence. In our view, neither decision advances defendant's argument. In *Buchler*, the state corrections division negligently permitted a convicted car thief, with no known history of violent conduct, to escape from custody. 316 Or at 502. Two days after the escape and more than 50 miles away from the site of the escape, the escaped prisoner shot two people, killing one and injuring the other. *Id.*

Following section 319 of the *Restatement (Second) of Torts*, this court held that, because the corrections division neither knew nor should have known that the prisoner would be "likely to cause bodily harm to others" if he escaped, it was not liable for the bodily harm that the prisoner caused. *Id.* at 506-07. As the court explained, it was not reasonably foreseeable that a convicted car thief, with no known history of violence, would engage in violent conduct after he had completed his escape. *Id.* at 507. The type of injuries that the escaped prisoner inflicted in *Buchler* were outside the scope of the risk created by negligently allowing a convicted car thief to escape. In this case, by contrast, the type of harm that occurred—the failure of the axle and the resulting harm to oncoming motorists—was squarely within the scope of the risk posed by defendant's negligent maintenance of the axle, or so a reasonable juror could find.

Nor does this court's decision in *Oregon Steel Mills* advance defendant's position. In that case, an accounting firm negligently audited and approved a company's financial

---

[6] Moreover, if the claim for relief against defendant does not allege that Lewis Farm did or failed to do anything that would have caused the axle to fail, it is difficult to see how Lewis Farm's conduct can be described as a "harm-producing force."

statements for the 1994 tax year. 336 Or at 346. The accounting firm was aware when it conducted the audit only that the company planned a securities offering at some time in late 1995 or early 1996. *Id.* As a result of the accounting firm's negligence, the company had to delay its securities offering from May 2, 1996, when it had hoped to enter the market, until June 13, 1996, when it made the offering. *Id.* at 333. As a result of an unrelated decline in the market, the price at which the company could offer its shares was $2.50 lower per share on June 13 than on May 2. *Id.*

The company brought an action against the accounting firm for the difference in the yield from the sale of its securities. *Id.* at 333-34. The trial court granted the accounting firm's motion for summary judgment, and the Court of Appeals reversed. *Id.* at 332. On review, this court held that the decline in the market price was not a reasonably foreseeable consequence of the accounting firm's negligence. The court observed that, when the firm audited the company's books, the timing of the anticipated offering "was known in only the most general sense." *Id.* at 346. The offering was not "scheduled to occur at a specific, advantageous time," *id.*, and the court declined to hold that the accounting firm should have foreseen how the market would perform at some unspecified time more than a year and a half in the future. Moreover, the court observed that, to the extent that the company had wanted to time the offering to take advantage of the company's favorable earnings report, it had been able to do so. *Id.* at 347. In sum, the court held that, on the record before it, it could not say that the harm that the company suffered was a reasonably foreseeable consequence of the accounting firm's negligence.

In *Fazzolari*, this court cautioned against turning fact-specific decisions on foreseeability into rules of law. *See* 303 Or at 16 (explaining that "phrasing a conclusion in a particular case in terms of 'duty' or 'no duty,' without reference to any external standard, tends to turn into an apparent rule of law what may be only a determination concerning foreseeability in the circumstances of that case"). Neither *Buchler* nor *Oregon Steel Mills* departs from that precept. Rather, each of those decisions turned on the specific facts before the court. Neither decision purports to convert every subsequent act of

negligence into an "intervening harm-producing force" that will immunize a defendant from responsibility for its own negligence. To the extent that defendant reads those decisions that broadly, it errs. Put differently, neither decision provides a basis for saying that the decision in *Hills* is no longer good law or that the principle stated in that decision does not control the resolution of defendant's motion to dismiss. The allegations in plaintiff's claim for relief against defendant state a claim for negligence.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**BALMER, J.,** concurring.

I agree with the majority's analysis and disposition of this case. I write separately only to address concerns raised by defendant, *amicus curiae* Oregon Association of Defense Counsel, and the concurring opinion in the Court of Appeals about the impact that this case may have on Oregon tort law. Defendant, for example, argues that a decision here that plaintiff's complaint states a claim for relief "would require a used vehicle seller, to avoid potential liability, to completely refurbish a vehicle before sale." To preclude that result, defendant asserts that this court must hold that defendant's alleged conduct could not "unreasonably create a foreseeable risk of harm." For its part, *amicus* contends that this case requires the court to determine "[w]hat are the extreme circumstances where foreseeability is not reasonable."

In fact, as I discuss briefly below, the allegations in the complaint plainly do state a claim for relief. As to the request by *amicus* that we use this case to set out the circumstances in which "foreseeability is not reasonable," that general question simply is not presented by this case and does not lend itself to an abstract answer in any event. Rather, in this case, consistent with this court's usual approach, the majority has decided only the issue before the court, drawing on our precedents and based on the arguments presented by the parties. That decision reaffirms prior case law, notably *Hills v. McGillvrey*, 240 Or 476, 402 P2d 722 (1965), and leaves intact the legal defenses and responses to the facts alleged in the complaint that defendant may have, as well as

legal arguments that other defendants may raise in other contexts.

The problem with defendant's position here is that, at this stage in the case, the answer to the question whether defendant's conduct may have unreasonably created a foreseeable risk of harm to plaintiff can be based only on the allegations in the complaint. Those allegations include that defendant negligently failed to perform recommended axle maintenance and to maintain a truck that was safe to operate; that defendant sold the truck to a third party; and that the subsequent failure of the truck's axle was a substantial cause of plaintiff's injury. As the majority opinion carefully points out, accepting those allegations as true, it is difficult to escape the conclusion that defendant's conduct "unreasonably created a foreseeable risk of harm" to plaintiff.

By limiting its defense (at this point) to asserting that the allegations in the complaint fail to state a claim for relief, defendant has staked its position on a single defense: that its sale of the truck to a third party more than a year before plaintiff was injured necessarily bars plaintiff from bringing this action. The majority correctly rejects that argument.

But, of course, it does not necessarily follow that defendant is liable for plaintiff's injuries. The facts of this case might show that defendant *was* negligent, that defendant's negligence *was* a substantial cause of plaintiff's injuries, that plaintiff's injury *was* foreseeable, and that no contract or other source of law limits or supersedes defendant's liability. On the other hand, the facts might show that defendant was *not* negligent in maintaining the truck. The facts might show that, after defendant had sold the truck and before the injury at issue here, the truck had been in a severe accident that damaged the axle. The facts might show that when defendant sold the truck, the initial buyer had agreed to completely recondition the truck—and either had or had not done so. The facts might show that defendant had sold the truck for scrap, but that the buyer had failed to scrap the truck and instead had resold it.

I raise these possible scenarios not to suggest that they accurately describe the facts in this case or that they

necessarily would constitute successful legal defenses. Rather, I mention them because they demonstrate that the evidence may either refute the factual allegations in the complaint or may support one or more legal defenses that would permit defendant to avoid liability. Yet, because defendant has not filed an answer in which it could deny plaintiff's factual allegations and make its own factual allegations establishing any potential defenses, and because we lack even the limited factual record that we would have in a summary judgment proceeding, we must decide this case based only on the well-pleaded allegations in the complaint.

I am not critical of defendant's decision to file a motion to dismiss under ORCP 21 A(8). Defendants often face the dilemma of whether to file such a motion and perhaps terminate the trial phase of the litigation quickly and inexpensively—but, perhaps, incorrectly and subject to reversal on appeal—or whether to file an answer, engage in discovery, and later file a motion for summary judgment, if appropriate. That decision has to be made by litigants in light of the circumstances of each case. It is noteworthy that *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 83 P3d 322 (2004) and *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), two cases relied upon by the concurring opinion in the Court of Appeals, were decided on summary judgment. Even a cursory review of those decisions demonstrates that they rested on facts established in the summary judgment record and not only on allegations in the complaint. It is unlikely that the trial court in either *Oregon Steel Mills* or *Buchler*, looking solely at the allegations in the complaint, would have dismissed the complaint for failure to state a claim or, if it had, that such a decision would have been sustained on appeal.

The presence of the litigant's dilemma described above, however, does not mean that we can ignore our well-accepted standards for deciding motions to dismiss and our cases describing the elements of a cause of action for negligence. Here, those standards and cases fully support the majority's conclusion.