Argued and submitted May 15, at Mt. Hood Community College, Gresham, Oregon; decision of Court of Appeals affirmed, judgment of circuit court reversed in part, and case remanded to circuit court for further proceedings September 12, 2019

Nicole McLAUGHLIN,
*Respondent on Review,*

*v.*

Kenneth WILSON, M.D.,
*Petitioner on Review.*

(CC 13C21746) (CA A160000) (SC S066047)

449 P3d 492

Plaintiff filed complaint alleging that defendant had retaliated against her ORS 659A.030(1)(f). Defendant moved to dismiss the claim, arguing that his actions were not retaliation prohibited by that statute. The trial court granted the motion. The Court of Appeals reversed. *Held*: (1) As used in ORS 659A.030 (1)(f), "any person" includes individuals who are not employers; (2) "otherwise discriminate" in ORS 659A.030(1)(f) does not require an employment relationship; (3) defendant's conduct "otherwise discriminate[d]" against plaintiff.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Thomas M. Christ, Sussman Shank LLP, Portland, argued the cause and filed the briefs for petitioner on review.

Andrew Altschul, Buchanan Angeli Altschul & Sullivan LLP, Portland, argued the cause and filed the brief for respondent on review.

Shenoa Payne, Richardson Wright LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Kistler, Senior Justice pro tempore.**

_____

\* On appeal from Marion County Circuit Court, Tracy A. Prall, Judge. 292 Or App 101, 423 P3d 133 (2018).

\*\* Garrett, J., did not participate in the consideration or decision of this case.

WALTERS, C. J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

**WALTERS, C. J.**

Oregon's civil rights laws make it an "unlawful employment practice" for an employer to discriminate on the basis of any of several protected characteristics. The law protects that right and others by making it unlawful "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person" has opposed or reported certain unlawful practices. ORS 659A.030(1)(f). In this case, we are asked to decide the scope of that antiretaliation provision. The question before us is whether the retaliation prohibited by ORS 659A.030(1)(f) includes disparaging statements made by defendant, plaintiff's former supervisor, to an admissions officer at plaintiff's MBA program. Defendant offers two reasons why it would not be: he is not a "person," and his statements to the admissions officer did not "otherwise discriminate against" plaintiff, within the meaning of those terms as used in the statute. As we explain, we disagree with both arguments. "Person," as statutorily defined, includes all "individuals," and "otherwise discriminate against" is a broad term that encompasses defendant's conduct. We therefore affirm the decision of the Court of Appeals, *McLaughlin v. Wilson*, 292 Or App 101, 423 P3d 133 (2018), which ruled in plaintiff's favor and remand this case to the trial court for further proceedings.

## I.   FACTUAL AND PROCEDURAL HISTORY

Because this case arose out of defendant's motion to dismiss, "we assume that the facts alleged in the complaint are true and draw all reasonable inferences in plaintiff's favor." *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 278, 171 P3d 336 (2007). In 2012, plaintiff began working at Hope Orthopedics as a medical assistant. While employed at Hope, plaintiff worked closely with defendant, an orthopedic surgeon. Defendant supervised plaintiff's work and was responsible for training her. Initially, defendant was pleased with plaintiff's work and gave her a very positive performance evaluation. When plaintiff later applied to an MBA program at Willamette University, she asked defendant to provide a reference, and he wrote her a glowing one.

Over the next few months, defendant began to sexually harass plaintiff and attempted to initiate a sexual relationship with her. Because of defendant's authority at Hope, and because defendant had served as plaintiff's reference for her MBA application, plaintiff feared retaliation if she reported defendant's behavior. In June 2013, plaintiff was accepted into Willamette's MBA program. After plaintiff told defendant that she would be leaving Hope soon, defendant's conduct worsened. He continued his pattern of sexual harassment and criticized plaintiff's religious beliefs. Plaintiff then reported defendant's behavior to Hope.

Hope placed plaintiff on paid leave while it investigated her complaints, and plaintiff ultimately left Hope to enter the MBA program without returning to work. Plaintiff's complaints against defendant were resolved in August 2013. Five days later, defendant went to the office of the Director of Admissions at plaintiff's MBA program and asked to speak to the admissions director about "the person who I wrote a reference for." Defendant told the admissions director, falsely, that plaintiff had "left her past two jobs by getting large amounts of money and a gag order," and that defendant was concerned about plaintiff manipulating male faculty members. Those statements were spread to others at Willamette, including the dean of the MBA program, and plaintiff experienced unwanted attention and suffered emotional distress.

Plaintiff filed this action against defendant, raising several claims, including defamation, intentional infliction of emotional distress, and the claim that is relevant to this appeal, retaliation under ORS 659A.030(1)(f).[1] That statute makes it an "unlawful employment practice"

> "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

---

[1] Civil actions for damages caused by certain unlawful employment practices, including violations of ORS 659A.030, are authorized by ORS 659A.885(1)-(3).

ORS 659A.030(1)(f). Defendant moved to dismiss plaintiff's retaliation claim, arguing that, because he had not been plaintiff's employer when the alleged retaliation had occurred, he could not be held liable under that provision. The trial court granted defendant's motion. The case proceeded to trial, and plaintiff ultimately prevailed on her defamation claim but lost on her intentional infliction of emotional distress claim.

Plaintiff appealed, assigning error to the trial court's dismissal of her retaliation claim. Plaintiff argued that ORS 659A.030(1)(f) prohibits discrimination by "any person" and therefore was applicable to defendant. Defendant countered that the statute was not intended to reach coemployees, and that, in any event, the retaliation that plaintiff had alleged—retaliation occurring outside of the workplace—was not the type of discrimination proscribed by ORS 659A.030(1)(f).

The Court of Appeals ruled in plaintiff's favor, concluding both that defendant was a "person" within the meaning of ORS 659A.030(1)(f), and that his statements to the director of admissions of plaintiff's MBA program fell within the ambit of the statute. *McLaughlin*, 292 Or App 101. Defendant then petitioned for review, which we allowed.

## II.   "ANY PERSON"

A.   *Text and Context*

The disagreement between the parties begins with the term "person." Defendant argues that, as used in ORS 659A.030(1)(f), "person" does not include an individual like himself, who was not an employer. He observes that, prior to 2001, *former* ORS 659.030(1)(f) (1999), *renumbered as* ORS 659A.030(1)(f) (2001), had applied only to "any employer, labor organization or employment agency," and he contends that "any person" retains the same meaning, in light of legislative history that, he argues, indicates that the wording change was not intended to be substantive. The meaning of "any person" is a question of statutory interpretation, and we approach it using the methodology outlined in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We begin with an

examination of text and context, and then proceed to consideration of legislative history, to the extent that we find it to be helpful. *Id.* at 171-72.

ORS 659A.030(1)(f) makes it an unlawful employment practice

"[f]or any *person* to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

(Emphasis added.) The term "person" is one that the legislature defines, along with others "[a]s used in * * * chapter" 659A, in ORS 659A.001:

"(9)   'Person' includes:

"(a)   One or more individuals, partnerships, associations, labor organizations, limited liability companies, joint stock companies, corporations, legal representatives, trustees, trustees in bankruptcy or receivers.

"(b)   A public body as defined in ORS 30.260.

"(c)   For purposes of ORS 659A.145 and 659A.421 and the application of any federal housing law, a fiduciary, mutual company, trust or unincorporated organization."

We are obliged to apply that definition of the term. *State v. Couch*, 341 Or 610, 619, 147 P3d 322 (2006); *see also Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014) ("When the legislature provides a definition of a statutory term, we of course use that definition."). And, when we do so, it seems obvious that defendant would qualify as a "person" within the meaning of ORS 659A.001(9)(a): he is an individual.

We understand defendant to argue, however, that there is an implicit, contextual qualification to the first use of the word "person" in paragraph (f) of ORS 659A.030(1), such that "person" does not refer to all persons encompassed within the statutory definition. Rather, he contends that "person" refers to only persons who are employers and perhaps to labor organizations and employment agencies as well.

Three features of the text and context of ORS 659A.030(1)(f) strongly suggest that there is no such qualification. First, paragraph (f) not only contains no express qualifications to the meaning of the word "person," but actually refers to "*any* person." (Emphasis added.) The inclusion of the word "any," a term meaning "one indifferently out of more than two : one or some indiscriminately of whatever kind," *Webster's Third New Int'l Dictionary* 97 (unabridged ed 2002), is an indication that the legislature wanted "persons" to refer "indiscriminately" to statutorily defined persons of "whatever kind."

Second, the word "person" is used four times in the sentence that comprises paragraph (f). Defendant does not argue that the second, third, or fourth uses of the word "person" cannot refer to individuals other than employers. Yet, "use of the same term throughout a statute indicates that the term has the same meaning throughout the statute." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Moreover, the text of the statute links the usages. ORS 659A.030(1)(f) makes it unlawful "[f]or *any person* to discharge, expel or otherwise discriminate against *any other person* because *that other person*" has engaged in certain protected activities. ORS 659A.030 (1)(f) (emphases added). While the "other person" referred to must be a different person from the first person referred to—that is, the statute does not encompass discrimination by a person against himself or herself—the phrasing otherwise suggests that "person" and "other person" are drawn from the same class of persons. That class is defined in ORS 659A.001(9) and is a broad one that includes persons other than employers, labor organizations, and employment agencies.

Finally, a look at the other paragraphs of ORS 659A.030(1) indicates that the legislature understood the term "person" to mean something different from employers, labor organizations, and employment agencies, and used it intentionally in paragraph (f). Paragraphs (a) and (b) prohibit discrimination by an "employer"; paragraph (c) prohibits discrimination by a "labor organization"; paragraph (d) applies to discrimination by an "employer" or an

"employment agency"; and paragraph (e) applies to discrimination only by an "employment agency." By contrast, paragraph (f) uses "person"—a more general term. As the Court of Appeals correctly observed, "[t]hat statutory context strongly suggests that, had the legislature intended paragraph (f) to reach only employers (or labor organizations or employment agencies), it would have said so expressly, as it did in the related provisions." *McLaughlin*, 292 Or App at 107.

At this stage of the analysis, defendant principally relies on a single piece of context—a related provision that also uses the term "person." Paragraph (g) of ORS 659A.030(1) makes it an unlawful employment practice

> "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

ORS 659A.030(1)(g). Defendant contends that the phrase "whether an employer or an employee" limits the application of "person" in paragraph (g) to individuals who are employers or employees. He then suggests that that restriction in meaning likewise applies to the other uses of the word "person" in ORS 659A.030, including in paragraph (f).

As defendant acknowledges, the phrase "whether an employer or an employee" could have been used in paragraph (g) either to qualify the term "person" (limiting the referenced persons to employers and employees) or for emphasis (clarifying that "person" really does include employees). Plaintiff and *amicus* Oregon Trial Lawyers Association (OTLA) argue that it was intended for the latter purpose. They note that, when first enacted in 1949, the clause in question read "whether an employer or an employe[e], or not," Or Laws 1949, ch 221, § 5(5), which could not have been intended as a qualification. They note that the deletion of "or not" occurred during the codification of Oregon's laws in 1953 into the Oregon Revised Statutes, see ORS 174.510-520 (enacting that codification as law and repealing prior "statute laws"), and argue that the deletion was not intended to make a substantive change. Defendant contends, however, that the "whether" clause limits paragraph (g) to employers and employees, and that any other reading creates superfluity.

We need not settle that dispute to reject the contextual argument that defendant advances here. If "whether an employer or an employee" is included in paragraph (g) only for emphasis, then there is no basis from which to infer a limitation on the meaning of the word "person" as used in paragraph (f). If, on the other hand, "whether an employer or an employee" qualifies the meaning of "person" in paragraph (g), then that only strengthens the case that "person" as used in paragraph (f) is not subject to such a qualification. The qualifying clause is absent from paragraph (f) and "use of a term in one section and not in another section of the same statute indicates a purposeful omission * * *." *PGE*, 317 Or at 611.

In summary, we do not find support in the statute's text or context for the interpretation of the term "person" that defendant advances.

B.  *Legislative History*

Defendant suggests, however, that we consult legislative history, and we recognize that it is appropriate to do so for limited purposes:

> "Legislative history may be used to confirm seemingly plain meaning and even to illuminate it; a party also may use legislative history to attempt to convince a court that superficially clear language actually is not so plain at all—that is, that there is a kind of latent ambiguity in the statute."

*Gaines*, 346 Or at 172 (footnote omitted). Defendant contends that, in this case, the legislative history demonstrates that the legislature's replacement in ORS 659A.030(1)(f) of the phrase "employer, labor organization, or employment agency" with the word "person" was not intended to make substantive changes to existing statutes. Consequently, defendant argues, we should either (1) interpret paragraph (f) to reach only as far as its predecessor and limit its scope to employers, labor organizations, and employment agencies; or (2) correct the legislature's mistake in enacting text that expanded the scope of paragraph (f).

The text now found in ORS 659A.030(1)(f) was first introduced in 1949, as part of Oregon's Fair Employment

Practices Act. Or Laws 1949, ch 221, § 5(4). At that time, the statute made it an unlawful employment practice for "any *employer, labor organization or employment agency* to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this act or because he has filed a complaint, testified or assisted in any proceeding under this act." *Id.* (Emphasis added.)

The change that gives rise to this case, the replacement of "employer, labor organization or employment agency" with "person," occurred in 2001, as a result of the enactment of House Bill (HB) 2352 (2001). That bill was drafted by the Oregon Law Commission, and the change was part of an effort to bring the civil rights statutes administered by the Bureau of Labor and Industries (BOLI) into a single chapter and to "reorganize the statutes into more logical order, clarify the administrative process through which the bureau enforces the laws, and make the statutes easier to understand and use." Exhibit F, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb 5, 2001 (statement of Jack Roberts, Commissioner of BOLI). Given that purpose, the Oregon Law Commission reported that it had generally "refrained from changing [the] substance of the civil rights statutes." *Id.*

Defendant points to several statements as indicators that the legislature similarly understood HB 2352 as enacting no substantive change. For example, a member of the Oregon Law Commission (OLC) testified at a committee hearing:

> "One of the \*\*\* mantras that we had through this process is that we did not want to make any substantive changes, we really were looking at trying to make this a more user-friendly statute \*\*\*. [The] purpose was simply to go forward and try to do the reorganization as indicated without any substantive changes."

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb 5, 2001, Tape 9, Side A (statement of OLC member Jeff Carter). And the legislative counsel credited with drafting the bill gave a similar explanation:

> "[T]here was an extreme sensitivity to not making changes in substance, perhaps more so than almost any other group I've worked with probably over the last few sessions."

*Id*. (statement of Dave Heynderickx).

However, the discussion in the legislature demonstrates that at least some legislators recognized that the line between changes in substance and changes in procedure often is a fine one. We find revealing an exchange between Senator John Minnis, Chair of the Senate Committee on Judiciary, and Marcia Ohlemiller, legal policy advisor for BOLI, one of the bill's proponents. Ohlemiller began her summary of the bill for the committee by explaining that,

> "[o]ver the years, a number of different changes have been made to Oregon civil rights laws. *** Along the way, as different substantive protections were added, some procedural things didn't get put in there consistently all the way through. *** [F]or instance, what we call aider and abettor liability, which allows enforcement against people who aren't necessarily the employer but who participate in discrimination, is available in some types of discrimination but not in others. Cease and desist orders, which are a tool of the Commissioner to order a respondent to stop doing something that's been determined to be illegal [are] available under some statutes and not others. *And relief for retaliation for reporting civil rights violations [is] available under some types of discrimination and not others.*
>
> "* * * * *
>
> "We don't believe from looking at the statutes that any of this was intentional. It appears that with great enthusiasm some protections were put in, here and there, new things, but all the pieces weren't put in there to enforce those types of violations. *** Every attempt was made to keep it procedural and not substantive."

Tape Recording, Senate Committee on Judiciary, HB 2352, Apr 30, 2001, Tape 115, Side A (statement of Marcia Ohlemiller) (emphasis added). At that point, Senator Minnis interjected, "I'm a little unclear as to what you just said. *** Did you grant certain authorities that weren't previously granted?" *Id*. (statement of Sen John Minnis). After a brief back-and-forth, Senator Minnis clarified his question:

"What I'm trying to get clear in my mind is whether these were just areas of statutory law that were spread out in statutory law and you've now reorganized everything in a logical, sequential order or if you have made some assumptions about certain enforcement actions or investigative powers, and you've added investigative powers or enforcement actions where you didn't previously have statutory authority?"

*Id.* (statement of Sen John Minnis). Ohlemiller gave the following response:

"It was reworked and reorganized and to the best of our ability we constructed what we believed from the language that was there and the history we could find to be the ways these were supposed to be enforced."

*Id.* (statement of Marcia Ohlemiller). Senator Minnis responded, "What I'm sensing you're telling me is that \*\*\* there [was] some assumption about what the legislature either intended or didn't." *Id.* (statement of Sen John Minnis). After some further discussion, Senator Minnis summarized his takeaway from the hearing: "[T]here are some substantive changes in here but they're minor, I assume, or conforming kind of substantive changes." *Id.* (statement of Sen John Minnis).

That exchange suggests that, as one other legislator observed, "What's substantive is sometimes in the eye of the beholder and there are degrees, I guess, of substantiveness \*\*\*." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb 5, 2001, Tape 9, Side A (statement of Rep Lane Shetterly). Put another way, a premise of defendant's reading of legislative history is that, when the bill's drafters and proponents told the legislature that the bill contained no "substantive" changes, what they meant was that it did not change the scope of any provisions. However, based on the exchange with Senator Minnis, it appears that Ohlemiller, at least, had a different understanding of what the word "substantive" meant. Thus, the legislators who enacted the bill may have understood that it included some changes that the drafters believed were necessary to carry out the legislature's overall intent, some of which could be thought of as matters of substance.

Even if we were to accept the idea that the legislature did not intend to make any changes to the scope of existing statutes, it would be difficult to understand the replacement of the phrase "employer, labor organization or employment agency" with the word "person" as anything other than such a change. Defendant suggests that the word "person" can be understood as a convenient shorthand for those three entities because they are "the subjects of the unlawful employment practices described in the *other* paragraphs of that subsection."[2] But, as discussed, the word "person" does not have that shorthand meaning in other parts of the sentence comprising ORS 659A.030(1)(f), and giving the word that meaning only when it is first used in that sentence would be an unlikely drafting choice. Such a change would work against the principal goal of "mak[ing] the statutes easier to understand and use," House Committee on Judiciary, Subcommittee on Civil Law, HB 2352, Feb 5, 2001 (statement of Jack Roberts, Commissioner of BOLI), and we doubt that that was what the legislature had in mind.[3]

Likely for that reason, defendant's more forcefully argued contention is that the change to the text was simply a mistake, one that this court should correct by declining to give it any effect. When such mistakes occur, defendant contends, "the courts are supposed to honor the intent, not the mistake—to give effect to the legislative purpose, not the nonconforming text." Here, though, as the foregoing discussion of the legislative history shows, there is no persuasive indication that the legislature's change to the text *was* a mistake. The legislative history does not clearly indicate that the legislature did not intend to expand the scope of

---

[2] That suggestion is founded on an inaccurate premise, because, even on defendant's reading, paragraph (g) applies to employees as well as to employers.

[3] In the alternative, defendant observes that ORS 659A.030(1)(f), both before and after 2001, protects persons who had opposed practices or made reports concerning unlawful practices under civil rights statutes that are not related to employment, such as ORS 659A.403 (prohibiting discrimination in places of public accommodation) and ORS 659A.421 (prohibiting discrimination in real estate transactions). Defendant suggests that the replacement of "any employer, labor organization, or employment agency" with "any person" may have been intended to expand the scope of paragraph (f) to encompass more retaliation relating to those other provisions. If that argument is correct, a question that we do not address, it would support, rather than undermine, an understanding that the legislature intended to make a change to the scope of paragraph (f).

ORS 659A.030(1)(f). As noted, that history can be understood as indicating an intent to provide consistency, even if that might result in changes to the scope of some provisions.

Moreover, we long have recognized that "[t]his court cannot correct clear and unambiguous language for the legislature so as to better serve what the court feels was, or should have been, the legislatur e's intent." *Monaco v. U. S. Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976); *see also State ex rel. Everding v. Simon*, 20 Or 365, 373-74, 26 P 170 (1891) (stating the same principle). And, significantly, that is the manner in which the legislature has asked us to interpret its enactments. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted.").

That rule is in no way at odds with the fact that the "paramount goal" of our interpretive methodology is oriented around the "paramount goal" of "discerning the legislature's intent." *Gaines*, 346 Or at 171. Rather, "it is for the legislature to translate its intent into operational language." *Monaco*, 275 Or at 188. Beyond that, "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law." *Gaines*, 346 Or at 171. In this case, where defendant's principal evidence of a mistake is legislative history indicating, at most, a general effort to refrain from substantive changes, we see no reason to doubt that the legislature's chosen text is the best window to its intent. "[L]egislative history cannot substitute for, or contradict the text of, that statute." *White v. Jubitz Corp.*, 347 Or 212, 223, 219 P3d 566 (2009).[4] We conclude that, as relevant here, the

---

[4] For a contrary conclusion, defendant relies on the California Supreme Court's decision in *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal 4th 1158, 177 P3d 232 (2008). That case is similar to this one in its broad strokes—the California legislature added "person" to its employment discrimination retaliation statute without much in the way of explanation, and the California Supreme Court was asked to decide whether that extended its scope to cover supervisors— but is meaningfully different in its details. Because that decision was issued well after the 2001 change in Oregon law, that decision cannot be considered in evaluating the Oregon Legislative Assembly's intent; it is helpful only to the extent that it is persuasive. The specifics of that decision are different enough that we do not find the California Supreme Court's reasoning helpful here.

word "person" in ORS 659A.030(1)(f) includes an "individual" such as defendant. ORS 659A.001(9)(a).

### III.   "OTHERWISE DISCRIMINATE AGAINST"

We now turn to the second disputed phrase in ORS 659A.030(1)(f), "otherwise discriminate against." Plaintiff argues that that phrase encompasses differential treatment occurring outside of the workplace, even when that treatment has no connection to employment at all. Defendant contends that "otherwise discriminate" is limited by its context—the two preceding terms "discharge" and "expel"—and the canon of *ejusdem generis* to discrimination affecting the terms or conditions of employment. As we explain, we do not need to determine the full breadth of "otherwise discriminate against" to conclude that defendant's actions fall within it.

We start with *PSU Association of University Professors v. PSU*, 352 Or 697, 291 P3d 658 (2012), because plaintiff argues that, in that case, we decided that the term "otherwise discriminate" in ORS 659A.030(1)(f) includes retaliatory acts outside the employment context. In *PSU Association of University Professors*, we were asked to consider whether ORS 659A.030(1)(f) prohibited a collective bargaining agreement that provided a grievance procedure, but relieved the employer of all obligations under that procedure if the employee filed a complaint with an outside agency or commenced a lawsuit. *Id.* at 699-700. That case thus involved retaliation within the employment context for filing a complaint in a court or outside agency, and the question was not whether the phrase "otherwise discriminate against" encompassed conduct outside that context but whether the defendant's conduct was sufficiently severe to be discriminatory. Nevertheless, we focused on the term "otherwise discriminate against" in our analysis and, applying our ordinary interpretive methodology, reasoned that paragraph (1)(f) "is written in broad terms to safeguard access" to the enforcement mechanisms put in place by ORS chapter 659A. *Id.* at 710. Finding the United States Supreme Court's interpretation of the antiretaliation provision in Title VII to be "useful additional context," *id.* at 712, we drew on the

Supreme Court's decision in *Burlington N. & S. F. R. Co. v. White*, 548 US 53, 126 S Ct 2405, 165 L Ed 2d 345 (2006), in holding that ORS 659A.030(1)(f)

> "restricts an employer from engaging in retaliatory activity that reasonably would impede or deter employees from pursuing their rights under that chapter."

*PSU Association of University Professors*, 352 Or at 713.

*PSU Association of University Professors* provides some guidance here. In parts of his arguments about the meaning of "otherwise discriminate against," defendant asks us to rule that paragraph (f) is limited to discrimination that affects the "terms, conditions or privileges of employment," in the same way that paragraph (b) expressly is so limited.[5] Paragraph (f) does not use the words "terms, conditions or privileges of employment," and that position is one that we necessarily rejected in *PSU Association of University Professors* in holding that the relevant standard for paragraph (f) is whether the act was one "that reasonably would impede or deter employees from pursuing their rights under that chapter." *Id.* at 713; *see also Burlington*, 548 US at 64 (holding that Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"). In applying that standard in *PSU Association of University Professors*, we did not ask whether the grievance procedure was a "term," "condition," or "privilege" of employment, but looked to whether "the employer's policy would tend to dissuade employees from pursuing their protected rights because exercising those rights would result in a substantive difference in treatment," treating the question as identical under Title VII and ORS 659A.030(1)(f). *Id.* at 717.

---

[5] ORS 659A.030(1)(b) makes it an unlawful employment practice

"[f]or an employer, because of an individual's race, color, religion, sex, sexual orientation, national origin, marital status or age if the individual is 18 years of age or older, or because of the race, color, religion, sex, sexual orientation, national origin, marital status or age of any other person with whom the individual associates, or because of an individual's juvenile record that has been expunged pursuant to ORS 419A.260 and 419A.262, to discriminate against the individual in compensation or in terms, conditions or privileges of employment."

As helpful as *PSU Association of University Professors* is, it does not decide the matter before us. In that case, we noted the similarity of our standard to the standard in *Burlington*, and it also is true that *Burlington* had held that Title VII's "antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington*, 548 US at 67. But whether ORS 659A.030(1)(f) extended that far was not a question that we had cause to consider in *PSU Association of University Professors*, and our statement in that case referring to retaliation by an "employer" against "employees" was simply a statement that was consistent with the facts of that case. *Id.* at 713. Thus, the question whether ORS 659A.030 (1)(f) applies to discriminatory acts that take place outside of the workplace is an open one, and we resolve it through our ordinary interpretive methodology. *See Gaines*, 346 Or at 160 (articulating that methodology).

Turning again to the text of ORS 659A.030(1)(f), defendant suggests that, applying the canon of *ejusdem generis*, "otherwise discriminate against" should be limited to "acts that adversely affect employment status or union membership but don't go so far as to terminate it." Defendant contends that the phrase should not encompass actions that occur outside the workplace and, in the context of discrimination by employers, should be limited to conduct affecting terms and conditions of employment.

*Ejusdem generis* is an interpretive principle under which "a nonspecific or general phrase that appears at the end of a list of items in a statute is to be read as referring only to other items of the same kind." *Vannatta v. Keisling*, 324 Or 514, 533, 931 P2d 770 (1997). "That does not mean, of course, that the specific examples constitute the universe of items to which the general term refers; rather, it means only that our interpretation of the general term includes consideration of those specific examples." *Schmidt v. Mt. Angel Abbey*, 347 Or 389, 404, 223 P3d 399 (2009). We agree with defendant that the structure of the phrase "discharge, expel, or otherwise discriminate" in paragraph (f) makes it appropriate to apply *ejusdem generis* to interpret "otherwise discriminate." "Discriminate" is a nonspecific term, and the

inclusion of "otherwise" suggests that its content is defined in relation to the two prior terms in the list.[6]

"[W]hen using the principle of *ejusdem generis*, the court seeks to find, if it can, a *common* characteristic among the listed examples." *Schmidt*, 347 Or at 405 (emphasis in original). Here the common characteristic cannot be an employment relationship or terms and conditions of employment. Only one of the two listed forms of discrimination—"discharge"—refers to an action taken within an employment relationship or that affects the terms and conditions of employment. The other listed term, "expel," more naturally speaks to a loss of membership in a labor organization. Tellingly, "expel" appears in ORS 659A.030(1)(c), which prohibits discrimination by labor organizations, but not in paragraphs (a), (b), or (d), which prohibit discrimination by employers. Rather than suggesting that "otherwise discriminate" is limited to an employment relationship or the terms and conditions of employment, the inclusion of "expel" is a strong indicator that the discrimination about which the legislature was concerned in paragraph (f) was *not* so limited.

Defendant's further suggestion that "otherwise discriminate" should be read to be limited to "acts that adversely affect employment status or union membership" also finds no purchase. Even before the addition of the word "person" in 2001, a change that no party argues *narrowed* the meaning of "otherwise discriminate," paragraph (f) was concerned with more than just discrimination by employers and labor organizations. Between 1949 and 2001, that

---

[6] *Amicus* OTLA contends that it is inappropriate to apply *ejusdem generis* when a list concludes with the word "otherwise." The only case cited for that proposition, *Jennings v. State Ind. Acc. Comm.*, 190 Or 557, 227 P2d 829 (1951), is inapposite. In that case, the question was whether the plaintiff "was adapting or assembling [a] Ferris wheel 'for sale or otherwise.'" *Id.* at 561. In interpreting the term "otherwise," we noted that, "[s]ince the term 'sale' has a limited meaning, there is nothing else that might be deemed of a kindred or similar nature; therefore, the rule of *ejusdem generis* does not apply," *id* at 561—that is, *ejusdem generis* could not apply, because there was only one preceding term in the list, rather than two or more terms with something in common. More recently, we did apply *ejusdem generis* in the context of a list with multiple terms concluding with "otherwise." *See Southern Pacific Trans. Co. v. Dept. of Rev.*, 295 Or 47, 62, 664 P2d 401 (1983) ("The term 'otherwise' broadens the definition of property but, construed by the *ejusdem generis* rule, stays within this familiar arena.").

paragraph applied to "employer[s], labor organization[s] or *employment agenc[ies]*." *See former* ORS 659.030(1)(f) (1999), *renumbered as* ORS 659A.030(1)(f) (2001) (emphasis added); Or Laws 1949, ch 221, § 5(4). If "otherwise discriminate against" were limited in the manner that defendant proposes, it would fail to include typical forms of retaliation by employment agencies, such as "fail[ing] or refus[ing] to refer for employment," which is one of the forms of discrimination by employment agencies prohibited by ORS 659A.030 (1)(e). The inclusion of employment agencies in the earlier version of paragraph (f) indicates that the legislative concerns included retaliation not only against current employees, but also against job seekers in general. A categorical limitation of ORS 659A.030(1)(f) to actions within an existing employment relationship or a labor union membership would be inconsistent with a legislative intent to maintain the statute's original protections.

Another indicator that paragraph (f) is broader than defendant contends is found in the forbidden bases for discrimination. Paragraph (f) prohibits discrimination not only against individuals who have filed complaints of discrimination, but also precludes discrimination against any person who has "testified or assisted in any proceeding under this chapter" and against any person who "has opposed any unlawful practice." That text encompasses many individuals who are not necessarily current employees of offending employers, current members of offending unions, and current job seekers using offending agencies. Once again, a limitation of "otherwise discriminate" to the terms and conditions of employment or active employment relationships would more or less nullify the more expansive choices that the legislature made elsewhere in paragraph (f).[7]

Our review of that context and statutory history convinces us that ORS 659A.030(1)(f) is not strictly limited to

---

[7] Defendant argues that, under the 1949 Fair Employment Practices Act, "[t]here was no remedy outside of the employment setting and thus no relief for anyone who was no longer employed." That is incorrect, as the Act authorized cease and desist orders against parties engaging in unlawful employment practices. Or Laws 1949, ch 221, § 7. A nonemployee complainant—someone in a position similar to plaintiff, for example—might well benefit from an enforcement of an order to cease and desist against a retaliatory former employer.

acts inside an employment relationship and at least extends to retaliation with a nexus to past or future employment. Plaintiff suggests that it extends further and can include acts with no connection to employment at all. In this case, we need not chart the outer limits of conduct reached by the phrase "otherwise discriminate against" in paragraph (f); the facts before us pass within its orbit.[8] Here, according to the complaint, defendant first recommended plaintiff to Willamette's MBA program on the basis of her work performance at Hope, which he observed while supervising her employment. Then, in response to her filing a complaint against him with their mutual employer, he reached out to the director of admissions to the MBA program and qualified that recommendation by making false statements about plaintiff's actions with her last two employers. The acts of retaliation alleged in the complaint have a clear nexus to plaintiff's prior employment, because defendant's statements were made as plaintiff's former supervisor and pertained to her actions at Hope. They also relate to plaintiff's access to future employment through the degree that she was pursuing. And, from the facts alleged, a reasonable factfinder could find that defendant's activity reasonably would impede or deter an employee from pursuing her rights under ORS chapter 659A. *See Bailey*, 343 Or at 278 ("In reviewing the trial court's ruling dismissing plaintiff's complaint, we assume that the facts alleged in the complaint are true and draw all reasonable inferences in plaintiff's favor.").

## IV.   CONCLUSION

To sum up, we agree with plaintiff that, when ORS 659A.030(1)(f) says "person," it means "person" as defined by ORS 659A.001(9), which includes "one or more individuals." Defendant falls within that definition, and thus he can be

---

[8] ORS 659A.030(1)(f) extends to retaliation for opposition to "any unlawful practice," which includes prohibited practices with no connection to employment. *See* ORS 659A.403 (prohibiting discrimination in places of public accommodation); ORS 659A.421 (prohibiting discrimination in real estate transactions). As a result of the change from "employer, labor organization, or employment agency" to "person" in paragraph (f), reading "otherwise discriminate against" not to require any nexus to employment would allow ORS 659A.030(1)(f) to be used as an antiretaliation provision for those other statutes. Whether such a reading would be permissible and intended by the legislature is a consequential question, and one that we do not decide.

held liable under ORS 659A.030(1)(f). In addition, "otherwise discriminate against," as used in ORS 659A.030(1)(f), is not limited to acts that take place inside the workplace. The acts alleged by plaintiff in her complaint have a nexus to her prior employment and fall within its scope. The trial court therefore erred in dismissing plaintiff's retaliation claim.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.